UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON SPEARMAN, ) | |
| CHRISTOPHER THOMAS and ) | |
| DREAM RUSHING, minors by their ) | |
| Mother, SHARON SPEARMAN, ) | |
| ) | Case No.  15-cv-07029 |
| Plaintiffs, ) | |
| ) | Judge Elaine Bucklo |
| v. ) | |
| ) |  Magistrate Judge Susan E. Cox |
| SGT. ELIZUND #1340, P.O. CARIBOU ) | |
| #7416, P.O. MOSTOWSKI #12898, P.O. ) | |
| STEPHANS #4337, P.O. HERNANDEZ ) | |
| #7387, and THE CITY OF CHICAGO, a ) | JURY DEMAND |
| municipal corporation, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS
PLAINTIFF'S MONELL CLAIM**

Plaintiffs by and through their attorneys GREGORY E. KULIS AND ASSOCIATES, LTD., submit this brief in response to the City of Chicago's Motion to Dismiss Plaintiffs' *Monell* Claims. In support thereof, Plaintiffs state as follows:

**LEGAL STANDARD**

**a. Rule 12(b)(6) Accepts All Pled Facts as True and Merely Tests the Sufficiency of the Complaint**

The City seeks to dismiss Plaintiffs' *Monell* claim for failure to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

1

alleged." *Iqbal*, 129 S Ct. at 1949 (citing *Twombly*, 550 U.S. at 55). The plausibility requirement is not a heightened pleading requirement, but "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Id.*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint is proper only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim on which relief may be granted. *Hickey v. O'Bannon*, 287 F.3d 656, 657 (7th Cir., 2002). All well-pleaded facts, and any reasonable inferences drawn therefrom, are accepted as true and are construed in favor of the plaintiff. *Id*; *see also Stachon v. United Consumers Club*, 229 F.3d 673, 675 (7th Cir. 2000). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs.*, *Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement

need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); cf. *Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole."). The Seventh Circuit further has explained that the plaintiff must allege "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). A complex case requires a greater level of detail to survive a motion to dismiss, "both to give the opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." *Id.* at 405.

    b.  **There is No Heightened Pleading Requirement With Respect to Monell Claims**

The Supreme Court has repeatedly held and confirmed that there is no heightened pleading requirement as to *Monell* claims beyond the basic standard set forth in Fed. R. Civ. P. 8(a)(2). *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) (per curiam); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *see also Estate of Sims ex rel Sims v. County. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("a federal court may not apply a heightened pleading standard more stringent than the usual Rule 8(a) pleading requirements" with respect to *Monell* claims); *McCormick v. City of Chicago,* 230 F.3d 319, 323-24 (7th Cir. 2000).

As demonstrated in Plaintiff's First Amended Complaint (hereafter "Complaint") and below, Plaintiffs have more than met their burden at this stage in the litigation. The Complaint alleged facts that, accepted as true, state a plausible claim for relief against Defendants for the

misconduct alleged.

### PLAINTIFF SUFFICIENTLY STATE CLAIMS FOR VIOLATIONS OF FEDERAL LAW UNDER THE MONELL DOCTRINE

At the heart of Plaintiffs' suit is a 42 U.S.C. § 1983 claim against the City. For a municipality to be liable under § 1983, a plaintiff must prove that action pursuant to municipal policy caused the alleged constitutional violation. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978). Defendants' arguments focus on the question of whether Plaintiffs' have adequately alleged an "official municipal policy." Official municipal policy can take three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007).

In cases alleging a municipality's failure to train, supervise, monitor, and/or discipline police officers, a municipality can be held liable when its officials have been "deliberately indifferent" to the constitutional deprivations that are caused by and that are likely to be caused by that failure. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *Gibson v. City of Chicago*, 910 F.2d 1510, 1519-23 (7th Cir. 1990). Deliberate indifference may be inferred where "the need for more or better supervision [or training] to protect against constitutional violations was obvious," but the policymaker "fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Cash v. Cnty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011); *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359-61 (2011); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029-30 (7th Cir. 2006) (a municipality shows deliberate indifference if it fails to provide further training after learning of a pattern of constitutional violations by the officers).

Drawing from the Supreme Court decisions in *Connick* and *Canton*, federal courts have repeatedly held that official municipal policy rises to the level of deliberate indifference if the following three conditions are met:

> (1) [the] policymaker knows "to a moral certainty" that its employees will confront a given situation; (2) either [the] situation presents employees with [a] difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling [the] situation; and (3) [a] wrong choice by employees will frequently cause [the] deprivation of constitutional rights.

*Cash*, 654 F.3d at 334 (citations omitted); *see also Connick*, 131 S. Ct. at 1361; *Canton*, 489 U.S. at 396. Each of these is a question of fact, based on the evidence developed in discovery and presented on a motion for summary judgment or at trial. At the pleading stage, a claim of liability pursuant to the *Monell* doctrine requires a plaintiff to plead facts allowing the inference that the violation of the plaintiff's constitutional rights resulted from "official municipal policy." *See Listenbee v. City of Harvey*, No. 11 C 03031, 2013 WL 5567552, at *3 (N.D. Ill. Oct. 9, 2013). As demonstrated below and in the Amended Complaint, Plaintiffs have sufficiently stated claims of municipal liability under *Monell*. Although Plaintiffs will have to present evidence demonstrating the existence of an official municipal policy or practice that caused and that will continue to cause constitutional injuries in order to survive summary judgment, *see Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008), they are not required to do so in their complaint or on a motion to dismiss. Accordingly, the Court should deny Defendants' motions to dismiss, and permit this case to proceed so that the parties can take discovery on the merits of these claims.

  a. **Plaintiffs Have Pled Sufficient Facts to Show that a Widespread Custom or Practice Exists**

The Amended Complaint alleges sufficient facts to demonstrate that the City had and has practices and customs that are so persistent and widespread as to practically have the force of

5

law. *See Complaint* ¶¶ 20-35. Defendants' argument attempts to sidestep the myriad of facts pled in the *Monell* count by curiously disregarding them as "true, but meaningless." The only legal authority Defendants cite for this proposition is the Seventh Circuit's 1985 decision in *Strauss v. City of Chicago*. Strauss, however, was decided pre-*Leatherman*, and although *Leatherman* did not squarely address Strauss, many courts in this district have regarded Strauss as effectively overruled by Leatherman, at least so far as the heightened pleading requirement is concerned, wherein a municipality can regard *Monell* allegations as "meaningless." *See e.g. Brogan v. Bd. of Educ. of Chi.*, 152 F. Supp. 2d 1082, 1083 (N.D. Ill. 2001, Shadur, J.) ("later developments, more consistent with the notice pleading (not fact pleading) regime dictated by the Rules (see, e.g., Rule 8(a)), have overtaken [*Strauss's*] unfortunate approach."); *Glover v. Vill. of Oak Lawn*, 2000 WL 1847599 at *6-7 (N.D. Ill. Dec. 13, 2000, Williams, J.); Treece v. Vill. of Naperville, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995, Gottschall, J.) ("this type of heightened pleading requirement came under criticism and was eventually rejected by the Supreme Court in *Leatherman v. Tarrant County*.); *Clay v. Brown*, 1998 WL 417503 at *13 (N.D. Ill. July 20, 1998, Gottschall, J.) ("*Strauss* is no longer the appropriate standard for determining the adequacy of pleadings."). Indeed, in 2006, at least one court in this district commented that it was "surprising" that the City of Chicago continued to rely upon *Strauss* "six years after our Court of Appeals' decision in *McCormick v. City of Chicago*…and more than 13 years after the Supreme Court's unanimous opinion in *Leatherman*…" *Marcavage v. City of Chi.*, 467 F. Supp. 2d 823, 828 (N.D. Ill. 2006, Shadur, J.). An additional decade has passed since Judge Shadur's remarks, and yet the City of Chicago continues to cite to this outdated precedent, entirely to its own detriment.

To show the existence of a widespread custom or practice under *Monell*, a plaintiff must plead facts that show that the municipality was aware of the behavior, or that the behavior was so widespread that the City should have been aware of it, and that the City or its policymakers were "'deliberately indifferent' as to [the widespread practice's] known or obvious consequences." *Hall v. City of Chicago*, 989 F. Supp. 2d 699, 708 (N.D. Ill. 2013) (citations omitted); *see also Gibson*, 910 F.2d at 1519-23 (official inaction in the face of a known or obvious consequence of the custom or practice constitutes a deliberate choice that may be properly thought of as a city policy or custom that is actionable under § 1983). Further, "allegations with respect to the pervasive nature of the alleged constitutional violations [a]re sufficient to establish that the practice was widespread enough to impute constructive knowledge to the City." *Hall*, 989 F. Supp. 2d at 708. *See also Floyd v. City of New York*, 959 F. Supp. 2d 540, 660 (S.D.N.Y. 2013) (finding that the NYPD was liable under a *Monell* theory based on "practices so persistent and widespread as to practically have the force of law" in part because statistical evidence showed that there were a high percentage of contact cards filled out by NYPD officers that did not identify a suspected crime which would have legally justified the stop or stop and frisk).

Although the Seventh Circuit "has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice," it plainly has suggested that more than three incidents are necessary. *Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014). Plaintiffs' Amended Complaint pleads significantly more than three incidents of the customs or practices of impropriety of Chicago Police Officers, particularly with references to LaQuan McDonald, where the City of Chicago made a payment of 5 million dollars to the victim's family and prevent the dissemination of the video of the incident. Furthermore, the Complaint also alleges the plethora of complaint registers the named officers received in other cases throughout their

7

careers. Lastly, the Complaint references a recent federal jury that took place in the Northern District of Illinois which affirmed the existence of a code of silence within the ranks of the Chicago Police Department. Plaintiffs have pled sufficient facts to show that the City and its officials were aware of, and even encouraged, the widespread custom that violating a citizen's rights was tolerated, acceptable, and would not result in disciplinary action. Finally, the Amended Complaint alleges sufficient facts to state a claim that the City failed to train, supervise, monitor, and discipline CPD officers with deliberate indifference to the constitutional deprivations that were caused by and that were likely to be caused by those failures. The City parses each individual allegation in an apparent attempt to test whether each separate allegation *on its own* has merit. However, the Court must look at the Amended Complaint as a whole to determine whether Plaintiffs have stated claims upon which relief can be granted. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chicago*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole."). Taken together, rather than picked apart, the Amended Complaint adequately alleges an official municipal policy for which the City can be held liable under *Monell*, and the City's Motion to Dismiss should be denied.

      Rather than concede that the Amended Complaint adequately alleges the elements of a claim for municipal liability under *Monell*, Defendants attempt to test the merits of Plaintiffs' claims. By trying to get this Court to focus on *the merits* of Plaintiffs' claims, Defendants run far afield from the Rule 12(b)(6) standard, which asks whether the Plaintiffs have stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants' arguments on the merits of Plaintiffs' claims merely highlight the fact that the Amended Complaint plainly meets this standard.

First, the City relies on completely impertinent cases for their argument. The only point that Defendants correctly raise with respect to *McCauley* is that the Seventh Circuit dismissed the plaintiff's *Monell* claim. Beyond this thin reed, the cases have absolutely nothing in common. In *McCauley*, the estate of a woman gunned down in a church parking lot by an ex-boyfriend with a violent history brought an equal protection claim against the City of Chicago for failing to maintain a policy to equally protect female victims of domestic violence. In interpreting the *Monell* claim under *Iqbal* and *Twombly*, the court held that in order to state a facially plausible equal-protection claim under *Monell*, the factual allegations in McCauley's complaint must allow us to draw the reasonable inference that the City established a policy or practice of intentionally discriminating against female victims of domestic violence in the provision of police protection. *McCauley v. City of Chi.*, 671 F.3d 611, 618 (7th Cir. 2011). Along these lines, because the equal protection clause did not entitle the decedent to adequate police protection, the lack thereof could not form the basis of a *Monell* claim, as it amounted to "entirely lawful conduct." *Id.*

Defendants also seemingly suggests that the viability of a "code of silence" claim against the City of Chicago should be measured against its factual similarity to *Obrycka*. Not only does this argument miss the import of *Obrycka* by a rather significant margin, it offers in support two cases that do not aid the City in the slightest. In *Fuery*, the district court granted <u>summary judgment</u> for the City on its *Monell* claim because the plaintiff unsuccessfully attempted to establish an analogous *Monell* claim founded on the City's "cover-up" of their incident, with which the court disagreed. While the plaintiffs therein asserted that they, like the plaintiff in *Obrycka*, alleged that the City subsequently "covered-up" an officer's physical assault, the court granted summary judgment because the similarities between the cases was merely superficial – in particular, "Plaintiffs have failed to allege any cover-up after Szura

9

allegedly battered them." *Fuery v. City of Chi.*, No. 07 C 5428, 2015 U.S. Dist. LEXIS 18938, at *8 (N.D. Ill. Feb. 17, 2015). Although it certainly goes without saying that the legal standard by which a summary judgment motion is considered is far more exacting than that governing a motion to dismiss, this is not an idle point – the City *did* move to dismiss the *Monell* count in *Fuery* and lost handily, the court finding that it was "more than plausible to infer that Szura believed that he was above the law from the allegations of the Complaint." *Fuery v. City of Chi.*, No. 07 C 5428, 2009 U.S. Dist. LEXIS 39351, at *14 (N.D. Ill. May 6, 2009).

Likewise, the opinion Defendants cite to in *Sigle v. City of Chicago* is also completely irrelevant to the instant motion to dismiss. In *Sigle*, the determinative factor in granting summary judgment was that the plaintiff therein relied solely on the existence of prior lawsuits and citizen complaints and did not "proffered any expert testimony opining on the integrity of the complaint register investigations, nor has he adduced deposition testimony of OPS or IPRA investigators familiar with the City's investigation and discipline process." *Sigle v. City of Chi.*, 2013 WL 1787579 at *28-29 (N.D. Ill. Apr. 25, 2013).

Plaintiffs contend that on the face of its Complaint it has stated a viable Monell Claim. Whether discovery sought in regards to the Defendants numerous complaint registers, the practice of inventorying money, the numerous cases of "entering into apartments without warrant", the practice of "non-reporting" and the practice of covering up theft of drug money, and the "code of silence" can support this Monell Claim; has to be ultimately determined whether the discovery bears this out must be determined. Plaintiff however, believes that the facts in this case as alleged are enough to state a viable Monell Claim in their Second Amended Complaint.

10

## CONCLUSION

Defendants' Motion to Dismiss should be denied for the reasons stated herein.

                                      Respectfully submitted,
                                      **PLAINTIFFS**:

                                      /s/ Gregory E. Kulis
                                      One of Plaintiff's Attorneys


Gregory E. Kulis & Associates, Ltd.
30 North LaSalle Street
Suite 2140
Chicago, Illinois 60602
(312) 255-2100
Email: gkulis@kulislawltd.com
Attorney No: 6180966

Sami Azhari
30 North LaSalle Street
Suite 2140
Chicago, Illinois 60602
Phone: (312) 626-2871
Email: sazhari@azharillc.com
Attorney No: 6294661

11