```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

Sharon Spearman, *et al.*,       )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )   No. 15 C 7029
                                 )
Sgt. Elizondo #1340, *et*        )
*al.*,                           )
                                 )
          Defendants.            )

MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Spearman ("Spearman"), on behalf of herself and her children, filed suit under 42 U.S.C. § 1983 against several Chicago police officers ("the officer defendants") for violating her and her children's civil rights.  Spearman later amended her complaint to include a claim against the City of Chicago ("the City") under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978)).  The City has moved to dismiss the *Monell* claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below, the motion is denied.

I.

According to the complaint, whose allegations I must accept as true for purposes of this motion, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on or about March 1, 2015, Spearman and her

children were at home when several Chicago police officers broke down her apartment door. The officers claimed that they had a warrant to search the premises and entered with their guns drawn. Spearman was placed in handcuffs while the officers conducted the search. Finding no contraband, the officers realized that they had searched the wrong apartment. They left Spearman's home and executed the warrant at another residence (where they once again broke down the door), leaving Spearman and her children traumatized.

No reports were filed regarding the bungled search of Spearman's home. Instead, one of the officers who had participated in the search returned later in the day and gave Spearman $1,000 in cash "for her troubles." Am. Compl. ¶ 16. The complaint alleges on information and belief that the officers obtained the cash during the search that they conducted after leaving her home.

Spearman alleges that the officers' actions constituted an unlawful search and seizure in violation of the Fourth Amendment. She seeks to hold the City liable on the ground that her and her children's injuries were caused by the City's custom or practice of failing to supervise and discipline its police officers and the "code of silence" pervading the Chicago Police Department ("CPD").

II.

A motion to dismiss pursuant to Federal Rule 12(b)(6) challenges the sufficiency of a complaint, not its merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating the complaint's sufficiency, I must "construe it in the light most favorable to the nonmoving party, accept well-pled facts as true, and draw all inferences in [the plaintiff's] favor." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quotation marks and brackets removed).

To survive a Rule 12(b)(6) motion, a complaint need only surmount what the Seventh Circuit has described as "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint "must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quotation marks and ellipsis omitted). Second, the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id*. (citation and quotation marks omitted). As the Seventh Circuit has clarified, "plausibility" "in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Rather, it means only that "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id*.

III.

The City contends that the allegations in support of Spearman's *Monell* claim are deficient in several respects. I address the City's arguments in turn.

**A. Factual Allegations**

The City's first set of objections is directed at what it deems the complaint's general lack of factual detail and specificity. To begin with, the City argues that many paragraphs included in Spearman's *Monell* count are formulaic and conclusory. This is indeed true of some of the complaint's allegations, *see, e.g.*, Am. Compl. ¶ 30 ("This persistent and defiant code of silence was the moving force behind the Defendant's actions complained [sic] herein"), but it does not warrant dismissal of the *Monell* claim. As the Seventh Circuit has observed, "*Iqbal* makes clear that legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013).

Here, Spearman's conclusory assertions are buttressed by numerous factual allegations, including: (1) the fact that the officer defendants together have over ninety complaint registers lodged against them; (2) the verdict in *Obrycka et al. v. City Of Chicago et al.*, No. 07 2372 (N.D. Ill. Nov. 13, 2012), in which a jury found that a code of silence and/or a widespread custom of failing to adequately investigate and discipline officers existed

within the ranks of the CPD; (3) a statement by Chicago Mayor Rahm Emanuel during a December 2015 press conference acknowledging a prevailing "code of silence" within the CPD; (4) the convictions or guilty pleas of nine Chicago police officers on allegations of official misconduct during traffic stops and home searches between the years 2007 and 2012; (5) the statement by one of the latter officers during a 2012 interview that the practice of stealing from citizens during searches was widespread, well-known, and condoned by commanding officers; and (6) the City's payment of $5 million in "hush money" to the family of Laquan McDonald, who was fatally shot in 2014 by a Chicago police officer later charged with first-degree murder.

The City insists that these allegations are not enough. It examines each of the allegations individually and argues that none of them is sufficient to support a *Monell* claim. This divide-and-conquer mode of argument is unpersuasive and runs afoul of the firmly established requirement that complaints be read as a whole. *See, e.g.*, *Engel*, 710 F.3d at 709 (holding that when read as a whole, the plaintiff's complaint contained enough specific factual allegations to state a plausible claim); *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that under *Iqbal* and *Twombly*, "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid"); *see also*

*Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (citing *Atkins*).

When Spearman's factual allegations are taken together and the complaint is read as a whole, the complaint "give[s] enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. At the pleading stage, that is all the plaintiff is required to do. *Id*.

### B. Allegations Concerning *Monell*'s Custom, Policy, or Practice Requirement

The City also takes issue with the complaint's allegations regarding specific elements of Spearman's *Monell* claim. To establish a municipality's liability under *Monell*, a plaintiff must show that: "(1) [s]he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005) (quotation marks omitted).

With respect to element (2), Spearman claims that her rights were violated not as a result of an express policy or a decision-maker's deliberate act, but due to a widespread custom. The City first argues that the precise nature of the alleged custom is unclear. In some places, the custom complained of appears to be that of failing to train, supervise, monitor, and/or discipline

police officers. *See, e.g.*, Am. Compl. ¶¶ 21, 23 & 24. In other places, however, the custom in question appears to be the code of silence prevailing within the CPD. *See, e.g.*, *id*. ¶¶ 25, 26, 29 & 30. The City further argues that the expression "code of silence" is itself used ambiguously in the complaint, referring at times to police officers' custom of not "ratting" on one another, and at other times to the City's attempts to buy citizens' silence with funds obtained by shakedowns or other improper means.

The City may be correct in highlighting the complaint's equivocation on this point, but it is not fatal to Spearman's *Monell* claim. The complaint may be read as referring to a set of interrelated, mutually-reinforcing customs or practices, all of which contribute to civil rights violations of the kind alleged by Spearman. The City cites no authority for the proposition that *Monell* plaintiffs must precisely delineate a single custom or policy that caused their alleged harm. Indeed, *Obrycka* dispels such a notion. The plaintiff in *Obrycka* produced evidence "concerning both a code of silence within the CPD and a widespread custom or practice of failing to adequately investigate and/or discipline officers." *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 603 (N.D. Ill. 2012). As the City itself is keen to point out elsewhere in its brief, *see* Def.'s Mem. at 5, the jury returned a verdict for the plaintiff without specifying whether one or both of these policies formed the basis for its conclusion. *Obrycka*, 913 F.

Supp. 2d at 604. Likewise, any ambiguity in Spearman's complaint regarding the custom or practice that allegedly caused her injury affords no basis for dismissal of her *Monell* claim.

Next, the City argues that Spearman has not pleaded sufficient facts from which it can be inferred that City policymakers were *aware* of the CPD's alleged code of silence. In order to establish that the code of silence is attributable to the City, Spearman "must show that City policymakers were deliberately indifferent as to [the policy's] known or obvious consequences." *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (quotation marks and citation omitted). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps" to address it. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010)

The City argues that the only allegation supporting an inference of policymakers' awareness of the code of silence is Mayor Rahm Emanuel's December 2015 statement acknowledging the existence of a "code of silence" within the CPD. Am. Compl. ¶ 26. Putting aside the question of whether the Mayor's statement alone might be enough to establish knowledge among City policymakers, the complaint contains other allegations that might plausibly support such an inference. These include, once again, the finding of a code of silence within the CPD by the jury in *Obrycka*, and the aforementioned statement by an indicted CPD officer "that the

practice of stealing from citizens during searches was widespread and also well[-]known and condoned by commanding officers." Compl. ¶ 28. Reading the complaint in Spearman's favor, which I am required to do at this stage, it can plausibly be inferred from the allegations that policymakers were aware of wrongdoing by police officers and had a custom or policy of failing to discipline them.

The City also argues that Spearman fails to allege facts showing that the City was not merely *aware* of the code of silence, but that it *condoned* the policy. In particular, the City points out that, far from condoning the code of silence in his 2015 press conference, Mayor Emanuel declared his intention to eliminate it. Am. Compl. ¶ 26. I am not persuaded. The Mayor's condemnation of the code of silence does not establish that the custom is condemned by all relevant policymakers. Moreover, public condemnation is consistent with private condonation: it is entirely conceivable for policymakers to tacitly approve of the code of silence even while paying lip service to the need for its eradication.

For these reasons, I conclude that Spearman adequately alleges that the City was aware of, and condoned, a code of silence within the CPD.

### C. Causation

The City's final set of objections address *Monell*'s causation requirement. As noted above, to prevail on a *Monell* claim, a plaintiff must show that the custom or policy identified in the

complaint was the cause of her injury. *See, e.g.*, *Ovadal*, 416 F.3d at 535. It is not enough for a plaintiff to show merely that the custom or policy was the but-for cause of her injury. *See, e.g.*, *Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014) (*Monell* claim failed in part because policy was not the cause of plaintiff's "injury in anything but the 'but for' sense"). Rather, a *Monell* plaintiff must establish that the custom or policy was the "moving force" behind her injuries. *See, e.g., Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) ("In order to state a § 1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it.").

The City maintains that Spearman's allegations fall short of alleging that the CPD's code of silence was the moving force behind her and her children's injuries. Specifically, the City cites the allegation in one of the complaint's paragraphs that the officers violated her and her children's rights "all the while *hoping* the Chicago Police Department code of silence would en[s]ure that their misconduct would go unpunished." Am. Compl. ¶ 31 (emphasis added).

The City's point is a fair one, and if this were the complaint's only allegation relevant to *Monell*'s causation requirement, it would indeed be difficult to view the code of silence as the moving force behind Spearman's and her children's injuries. However, other allegations in the complaint indicate that

the code of silence played a more affirmative role in the officers' conduct. Spearman specifically asserts that the "code of silence was the moving force behind the Defendant's [sic] actions." Am. Compl. ¶ 30. She also asserts that the code of silence gave the officers "comfort and [a] sense that they can violate citizen's [sic] rights and not be disciplined." *Id*. ¶ 23.

Read once again in the light most favorable to Spearman, the thrust of the complaint is that the CPD's code of silence, and the City's policy of refusing to discipline officers, positively encouraged or emboldened the officer defendants to carry out searches in the reckless manner alleged by Spearman. This theory is not unique to Spearman. It has been asserted, and withstood motions to dismiss, in many other cases in this District. *See, e.g.*, *Maglaya v. Kumiga*, No. 14-CV-3619, 2015 WL 4624884, at *5 (N.D. Ill. Aug. 3, 2015) ("Plaintiffs' claims that the City refuses to discipline officers for engaging in misconduct and that police officers operate under a code of silence, in combination, allow for a plausible inference that these practices emboldened Defendant officers to illegally seize Plaintiffs' dog in violation of the Fourth Amendment."); *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 816 (N.D. Ill. 2006) ("A failure-to-train or -discipline allegation often supports a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts."); *Obrycka*, 913 F. Supp. 2d at 604

(discussing jury's finding that a code of silence and/or policy of failing to discipline officers was the moving force behind off-duty officer's beating of plaintiff in violation of her right to bodily integrity). The theory underlying Spearman's *Monell* claim is on all fours with the one advanced in these cases.

In a related vein, the City contends that Spearman cannot meet the causation requirement because, according to the complaint, the officers' actions were the result of a mistake. According to the City, Spearman must show that the officer defendants violated her and her children's rights "*solely* because the officers knew that they could get away with it without being disciplined by the department." Def.'s Mem. at 9. Such a showing would be impossible here, the City maintains, because the officers believed they had a warrant for the search. They had no reason to believe that they were doing anything wrong or would need to rely on a code of silence.

As initial matter, the City's formulation of the causation requirement, for which it cites no authority, is askew. It is possible for something to be the moving force behind an act without it being the *sole reason* for that act. It is true that the causal relationship asserted in Spearman's complaint between the municipal custom and the officers' actions is somewhat atypical. Nevertheless, the same theory has been successfully advanced, at least at the motion to dismiss stage, in other cases in this

District. The facts in *Daniels v. City of Chicago*, 920 F. Supp. 901 (N.D. Ill. 1996), for example, are similar to those alleged here. The plaintiff in *Daniels* brought suit against the City after the police incorrectly executed a search warrant at his address. In support of his *Monell* claim, the plaintiff alleged that the City had a policy of permitting "its officers to use unauthorized tactics to search homes to confiscate guns and drugs." *Id*. at 903. The court held that the policy could be "inferred from the City's failure to impose discipline commensurate with the gravity of these officers' misconduct." *Id*. In addition, the court held that the complaint's allegations satisfied *Monell*'s causation requirement. *Id*. at 904. Specifically, Judge Zagel opined that the complaint "could support an inference that there is a policy against discipline, and it is inferable that lack of discipline (and its deterrent effect) is a municipal policy that caused, in some sense, the bad acts alleged in the complaint." *Id*. at 904.[1]

The reasoning in *Daniels* applies with equal force here. At least at this juncture in the litigation, I cannot say that Spearman's *Monell* claim fails simply by virtue of the fact that it arises out of actions later found to be mistaken.

---

[1] The fact that *Daniels* was decided under the pre-*Twombly*/*Iqbal* pleading regime does not diminish its persuasive force. The import of the decision stems from the conceptual viability of the plaintiff's theory of causation, not the adequacy of the allegations in support of that theory.

In sum, the allegations in Spearman's complaint are adequate with respect to each of the challenged aspects of her *Monell* claim. Accordingly, I deny the City's motion to dismiss.

IV.

For the reasons explained above, the City of Chicago's motion to dismiss is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 2, 2016